NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

THOMAS ELWOOD SMITH, *Plaintiff/Appellee*,

*v.*

MARIE LOUISE[1] BURNETT, *Defendant/Appellant*.

No. 1 CA-CV 22-0311
FILED 1-12-2023

Appeal from the Superior Court in Mohave County
No. S8015PO202200150
The Honorable Aaron M. Demke, Judge, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Basinger Legal Services, PLC, Kingman
By Richard Basinger
*Counsel for Defendant/Appellant*

---

[1]      On the court's motion, it is ordered amending the caption in this appeal as reflected in this decision. The above-referenced caption shall be used on all further documents filed in this appeal.

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge Paul J. McMurdie joined.

**C A M P B E L L**, Judge:

¶1        Marie Burnett appeals the superior court's order continuing an order of protection granted in favor of Thomas Smith. Burnett challenges the court's findings supporting the continuation. Because the superior court did not abuse its discretion, we affirm.

## BACKGROUND[2]

¶2        Burnett and Smith once lived together in a home owned by Loren Burnett (Larry), now deceased. Burnett was Larry's wife of 20-plus years, and she is now the personal representative of his estate. Smith, although not biologically related, had a father-son relationship with the deceased. Following his death, a feud between Burnett and Smith arose surrounding the probate of Larry's estate. As relevant here, Burnett and Smith disagree about Smith's right to reside in the decedent's home without paying rent and about who is the rightful owner of Larry's Jeep Wrangler. Neither issue can be resolved in the instant proceeding.

¶3        Smith petitioned the superior court for an ex parte order of protection prohibiting contact by Burnett. He also named his girlfriend, his daughter, and her two sons (the grandsons) as parties needing protection. In his pleadings, Smith identified four incidents justifying the order; as alleged, Burnett:

> 1) "[C]ame to the house and took my Jeep keys taking the Jeep from the house[,]" parking it a few blocks away at her daughter's house, so that "when [Smith] got up for work the next morning [he] had to go find it";

---

[2]        We view the facts in the light most favorable to upholding the superior court's ruling. *See IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 63, ¶ 2 (App. 2011).

2) Said "she wished [Smith's grandson] would break his leg so he would stop breaking things[,]" "at [Smith's] grandson's birthday";

3) "[P]ulled up to the house with no regard for kids playing in the driveway and could have hit a kid with her erratic driving"; and

4) "[C]ame to the residence and screamed at [Smith's] grandchildren to get back in the[ir] [expletive] room spitting actually screamed and pointed at the kids cussing at them."

Finding reasonable cause to believe that domestic violence had occurred, the court issued an order of protection against Burnett. The court named Smith and his grandsons, and listed Smith's home, workplace, and the grandsons' school as protected locations. The court authorized Burnett to utilize a third party, her daughter, to "obtain[] her property" still at the residence.

¶4 The following day Burnett, no longer residing at the house, arrived after midnight and again caused a commotion. At that time, she was served the order of protection by law enforcement.

¶5 Burnett requested a contested hearing. At the hearing, both parties testified.[3] Smith and his girlfriend elaborated on the incidents alleged in the petition. Stressing Burnett's ongoing "erratic behavior," Smith noted that she already violated the protective order "by sending her nephew to the house for her property instead of her daughter."

¶6 Burnett then testified that (1) the Jeep was hers, and Smith's daughter is who moved it; (2) she spoke sarcastically about his grandson's leg; (3) she could not see the children playing at first and stopped once she did; and (4) she may have yelled at the children but did so because she did not want them present when she argued with Smith. Burnett also noted that Smith would "yell[]," "curse[]," and "scream[]" at her. Rationalizing her behavior, Burnett argued that she owned the Jeep and Smith owed her rent.

¶7 At the close of the hearing, the court first found "a toxic relationship . . . stem[ming] around an estate and probate dispute, landlord/tenant dispute." Although the allegations were "exaggerated,"

_____

[3] The court first heard from Smith's daughter as a "reluctant witness," who "d[id]n't want to be a part of any of the arguing or . . . fighting" and had "no objection" to removing Smith's grandsons from the order.

the court noted it was "obvious even by the testimony of [Burnett] that she can't even be in the same room" as Smith. The court affirmed the order of protection as modified, removing the grandsons and their school. It also removed the home as a protected address, allowing Burnett access "if [Smith] [wa]s not present." The court emphasized the order did not resolve the property dispute or "prevent [Smith] from being evicted" if Burnett had grounds to do so.

¶8        The court issued the amended order of protection the next day. Burnett then filed a motion for reconsideration and request for dismissal, disputing the sufficiency of the evidence. She also argued the court erred by not issuing a subsequent order "articulat[ing] those modifications" stated at the contested hearing.[4] The court denied the motion for reconsideration but clarified its order, naming harassment and disorderly conduct as the basis for domestic violence. *See* A.R.S. §§ 13-2904, -2921. Burnett timely appealed.

## DISCUSSION[5]

¶9        Burnett argues the superior court lacked a legal or factual basis for continuing the order of protection, thereby abusing its discretion. We review the continuance of an order of protection for an abuse of discretion. *See Cardoso v. Soldo*, 230 Ariz. 614, 619, ¶ 16 (App. 2012). "A [superior] court abuses its discretion when it makes an error of law in reaching a discretionary conclusion or when the record, viewed in the light most favorable to upholding the superior court's decision, is devoid of competent evidence to support the decision." *Savord v. Morton*, 235 Ariz. 256, 259, ¶ 10 (App. 2014) (internal quotation and citation omitted).

¶10        On the filing of a verified petition under A.R.S. § 13-3602(B), the court may issue an ex parte order of protection by finding reasonable cause to believe that "[t]he defendant has committed an act of domestic violence within the past year." A.R.S. § 13-3602(E)(2); *see also* Ariz. R. Protective Ord. P. 23(e)(1), (f).[6] Once a defendant requests a hearing, the

---

[4]        The record suggests Burnett had not received the amended order before moving for reconsideration. In any case, she accepted service of the amended order before filing this appeal.

[5]        Although Smith did not file an answering brief, in our discretion, we decline to consider his failure to do so as a confession of error. *See Cardoso v. Soldo*, 230 Ariz. 614, 616, ¶ 4 n.1 (App. 2012).

[6]        The parties do not dispute that they are "persons . . . having resided in the same household." A.R.S. § 13-3601(A)(1).

order will remain in effect only if the plaintiff "prove[s] the case by a preponderance of the evidence." Ariz. R. Protective Ord. P. 38(g)(3).

## I.    The Court Articulated Its Basis for the Order

**¶11**    Burnett contends that the court failed to articulate a legal or factual basis for continuing the protective order. Therefore, "the conclusion must be that there was no evidence of domestic violence." As support, she cites Rule 38(g)(4) of the Arizona Rules of Protective Order Procedure, which requires a court to "state the basis for continuing [or] modifying . . . the protective order." Ariz. R. Protective Ord. P. 38(g)(4). To be clear, to continue the order, the court must find, by a preponderance of the evidence, reasonable cause to believe an act of domestic violence has been committed within the past year based on a petition alleging "specific act[s] of domestic violence" and the evidence presented at a contested hearing. *See* Ariz. R. Protective Ord. P. 23. No more detail is necessary. *Cf.* A.R.S. § 25-403(B) (requiring "specific findings on the record" in child custody cases).

**¶12**    Here, the court emphasized that "this really is a toxic situation going on here and *these two should not have contact with one another*." (Emphasis added.) "[T]o prevent *more harassment* or more confrontations," the court continued the Order as modified. (Emphasis added.) In its subsequent order, the court expressly "f[ound] that there were incidents of harassment and disorderly conduct perpetrated by [Burnett] toward [Smith]." *See* A.R.S. §§ 13-2904(A), -2921(E) (defining disorderly conduct and harassment, respectively); *cf. Savord*, 235 Ariz. at 259, ¶¶ 11–13 (reversing because, as alleged, defendant had not committed an enumerated offense). Because Smith and Burnett had lived together in the past, the harassment and disorderly conduct qualified as incidents of domestic violence.

**¶13**    Contrary to Burnett's claims, the court properly articulated its basis for maintaining the modified order of protection. *See* Ariz. R. Protective Ord. P. 38(g)(4). We now consider whether the "specific act[s] of domestic violence" alleged by Smith in his petition were sufficient to support continuing the order of protection.

## II.    The Court Did Not Abuse Its Discretion in Finding Disorderly Conduct

**¶14**    Burnett argues "[t]here was no evidence, and most certainly no preponderance of competent evidence" to support a finding of domestic violence. The term "domestic violence" is defined by statute and "includes a wide array of criminal acts." *Shah v. Vakharwala*, 244 Ariz. 201, 203, ¶ 6

(App. 2018) (citation omitted); *see* A.R.S. § 13-3601(A). A plaintiff's petition must "allege each specific act of domestic violence that will be relied on at hearing," Ariz. R. Protective Ord. P. 23(b)(1), so that a defendant may "adequately prepare h[er] opposition," *Savord*, 235 Ariz. at 259–60, ¶ 16 (discussing due process requirements).

**¶15** Disorderly conduct may provide a basis for an order of protection. A.R.S. § 13-3601 (incorporating A.R.S. § 13-2904(A)(1)–(3), (6)). "A person commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood, family or person, or *with knowledge of doing so*, such person: (1) [e]ngages in fighting, violent or *seriously disruptive* behavior; or (2) [m]akes unreasonable noise[.]" A.R.S. § 13-2904(A)(1), (2). (Emphasis added.)

**¶16** Burnett argues that three of the allegations "became moot" when Smith's grandsons were removed from the order with the acquiescence of their mother. While the allegations were moot about the grandsons, the incidents remain relevant as instances of disorderly conduct regarding Smith. For example, testimony showed that her ire was directed at Smith when she "screamed and pointed at the kids cussing at them" in his presence. As Smith and his girlfriend testified, "she came flying into the house cussing and ranting," angry because Smith had made her nephew move to the couch. Burnett does not deny that her anger toward Smith got the best of her "loving feelings" for the children that night. Given this, the court did not abuse its discretion in relying on these incidents, committed in Smith's presence, to substantiate the findings necessary for the issuance and continuance of an order of protection.

**¶17** Burnett next argues Smith's allegation about her relocation of the Jeep was "false and untrue." Burnett notes that Smith "did not see [her] take the keys or the Jeep, and . . . she did not take the keys or move the Jeep." Although Smith conceded that he did not see Burnett take the keys in the middle of the night, he testified that he had a video of her taking the car. According to Burnett, Smith's daughter moved the car, albeit because Burnett had told Smith "to give [her] back the keys." In reconciling these discrepancies, "we defer to the trial court's superior position to weigh the evidence, make credibility determinations, and resolve conflicts in facts." *See Great W. Bank v. LJC Dev., LLC*, 238 Ariz. 470, 482, ¶ 42 (App. 2015).

**¶18** She also argues she "was and is" the sole owner of the Jeep. But as the court recognized, ownership of the Jeep is "minimally relevant" and not dispositive. At the time of the incident, and seemingly for a year since Larry's death, the car had been parked at the home where Smith—not

Burnett—resided. The ownership issue is for the probate court and cannot be resolved in this ancillary proceeding.

¶19　　Lastly, although claiming ownership of the home, Burnett did not live there at the time of the alleged incidents. She kept some belongings in the home after leaving and would often return to retrieve items leading to increasing conflict. And she often came over late at night, as evidenced by at least two past incidents and being served after midnight when she stopped by with her entourage in tow. If Burnett is, in fact, the landlord, her actions are improper in a landlord-tenant relationship. *Cf.* A.R.S. § 33-1376(B) (contemplating remedies for landlord's "entry in an unreasonable manner" or with the "effect of unreasonably harassing the tenant"). Regardless, coming into someone's house unannounced late at night while the occupants are sleeping is disruptive. Engaging in verbal disputes with the occupants is disorderly and supports the court's finding of disorderly conduct.

¶20　　While conflicting evidence exists, substantial evidence supports the superior court's ruling. *See In re Estate of Pouser*, 193 Ariz. 574, 580, ¶ 18 (1999). The court needed only one act of domestic violence to continue the order, *see* A.R.S. § 13-3601, and on appeal, "[w]e may affirm on any basis supported by the record," *State v. Robinson*, 153 Ariz. 191, 199 (1987). Given the ongoing property dispute between Burnett and Smith, the court was well within its discretion to interpret the four incidents as "seriously disruptive behavior" perpetrated by Burnett that, if not "inten[ded]" to disturb the peace, were done "with knowledge of doing so." *See* A.R.S. § 13-2904. The court, therefore, did not abuse its discretion in finding a sufficient basis to continue the order of protection.[7]

---

[7]　　Because the court's finding of disorderly conduct is supported, we do not examine its harassment finding. *See* A.R.S. § 13-3602(E); *Progressive Specialty Ins. Co. v. Farmers Ins. Co.*, 143 Ariz. 547, 548 (App. 1985) (noting appellate courts should not decide questions unnecessary to disposition of appeal).

## CONCLUSION

¶21 For these reasons, we affirm the superior court's order of protection against Burnett.



AMY M. WOOD • Clerk of the Court
FILED: AA